IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| M.T., *a minor, by and through his guardian,* Achick Prisca Eison, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Civil Action No. 17-1619 |
| JOHN PETERMAN, BERNARD SCOTT, JEREMY ERKEL, MAUREEN LOYER, ERIC KOSTIC, PENN HILLS SCHOOL DISTRICT, and UPMC d/b/a UMPC SPORTS MEDICINE, | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Plaintiff M.T., by and through his mother, Achick Prisca Eison, filed suit against Defendants John Peterman, Bernard Scott, Jeremy Erkel, Maureen Loyer, Eric Kostic, and Penn Hills School District on December 14, 2017. (ECF No. 1). Plaintiff has amended his Complaint twice, most recently on May 23, 2018. (ECF Nos. 16, 26). In his Second Amended Complaint, Plaintiff added UPMC, doing business as UPMC Sports Medicine, as an additional defendant. (ECF No. 26). Plaintiff alleges Defendants violated his right to bodily integrity in violation of the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983, and in violation of the Pennsylvania Constitution, Article I, Section 1. (ECF No. 26). Plaintiff also brings claims for negligence and vicarious liability against Defendant UPMC. (ECF No. 26).

On July 23, 2018, Defendants Erkel, Loyer, and UPMC filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim. (ECF No. 36). Also on July 23, 2018, Defendants Peterman, Scott, Kostic, and Penn Hills School District likewise filed a Motion to Dismiss the Second Amended Complaint for failure to state a claim. (ECF No. 39). The parties

1

filed briefs in this matter (ECF Nos. 37, 40, 45, 47, 48), and on January 23, 2019, the Court held a hearing on the Motions.

For the following reasons, both Motions to Dismiss will be granted.

**I. Background**

Penn Hills School District is a member of the Pennsylvania Interscholastic Athletic Association (PIAA), an organization that writes and enforces rules regulating athletic competition between schools. (ECF No. 26, at ¶¶ 20–21). Similarly, National Federation of State High School Associations (NFHS) develops rules for high school sports programs, including rules "that emphasize health and safety." *Id.* at ¶ 22. Every school year, PIAA adopts the updated football rule book from NFHS. *Id.* at ¶ 23. According to the Second Amended Complaint, among the NFHS regulations adopted by PIAA in 2017 are the Pre-Season Heat-Acclimatization Guidelines, which "are designed to prepare student athletes for a football season conducted in hot and/or humid environmental conditions that pose special heat-related problems to student athletes." *Id.* at ¶ 24. In particular, the Guidelines "advise coaches to have 'a scripted practice plan with breaks from activity as well as scheduled hydration and cooling off periods.'" *Id.* at ¶ 25. Additionally, "coaches are required to receive training that teaches them to identify noticeable behavioral changes in student-athletes indicating heat-related illness." *Id.* at ¶ 56. Coaches are also required to be aware of specific medical conditions and to "make adequate and specific adjustments to a practice regimen in an effort to prevent the student-athlete from sustaining heat-related illness." *Id.* at ¶ 53.

In the summer of 2015, Penn Hills High School's football program conducted its summer workout and practice program, under the supervision of John Peterman, Head Varsity Football Coach and Penn Hills High School Athletic Director, and Bernard Scott, Head Freshman Coach.

2

*Id.* at ¶¶ 5–6, 17–19. Jeremy Erkel and Maureen Loyer, employees of UPMC Sports Medicine, were contracted as athletic trainers for the varsity team and the freshman team, respectively, at Penn Hills High School. *Id.* at ¶¶ 7–8.

Plaintiff, an incoming freshman in the summer of 2015, joined the football program, despite never having participated in any school or organized football program. *Id.* at ¶¶ 16, 34. In accordance with program rules, on July 14, 2015, Plaintiff completed a "comprehensive initial pre-participation physical evaluation (CIPPE) performed by an Authorized Medical Examiner." *Id.* at ¶¶ 35, 38, 39. The examiner then submitted the CIPPE form to Penn Hills High School's football program organizers. *Id.* at ¶ 39. On the patient-completed portion of the form, Plaintiff disclosed that he was diagnosed with Sickle Cell Trait. *Id.* at ¶ 38. Due to Plaintiff's Sickle Cell Trait diagnosis, he "was particularly vulnerable to heat-related illness." *Id.* at ¶ 53.

On August 11, 2015, the football program began its mandatory heat acclimatization training. *Id.* at ¶ 42. Plaintiff attended and participated in the practice session from 9:00 a.m. to 12:00 p.m. *Id.* at ¶¶ 43, 45. Defendants instructed players to not bring any water bottles to the practice field. *Id.* at ¶ 44. Additionally, "Defendants, including Peterman and Scott," did not make "any efforts to ensure that participating student-athletes, including Plaintiff M.T., were adequately hydrated before the scheduled practice" began, nor did they "establish[] a specified hydration plan." *Id.* at ¶¶ 46–47. "Defendants, including Peterman and Scott," also conducted the practice session "without making any adjustments to the practice schedule or plan that took into consideration the temperature and humidity levels for August 11, 2015." *Id.* at ¶ 48. Defendants encouraged players to physically exert themselves, and "did not encourage and/or provide ample opportunity for student-athletes, including Plaintiff M.T., to drink as much or as frequently as comfort allowed." *Id.* at ¶¶ 50–51. According to the Second Amended Complaint,

3

these acts and omissions were inconsistent with PIAA and NFHS guidelines. *Id.* at ¶¶ 46–48, 50–51.

Shortly after the beginning of the practice session, Plaintiff "began demonstrating signs and symptoms of heat-illness and dehydration." *Id.* at ¶ 54. As practice progressed, Plaintiff "demonstrated excess fatigue and behavioral changes" including "clumsiness, stumbling, unsteadiness, and incoherency." *Id.* at ¶ 55. Said signs and symptoms were "open and obvious, and were or should have been identified by Defendants," but Defendants "took no responsive action." *Id.* at ¶¶ 56–57. Instead, Defendants "actively instruct[ed], demand[ed], and forc[ed] Plaintiff M.T. to continue participating." *Id.* at ¶ 58. At the end of practice, Plaintiff collapsed on the field. *Id.* at ¶ 67. "Defendants, including Peterman and Scott" left Plaintiff on the field and returned to the locker room. *Id.* at ¶ 68. Plaintiff remained on the field until his mother, Achick Prisca Eison, arrived to pick him up. *Id.* at ¶ 67. Plaintiff was able to crawl to his mother's car. *Id.* at ¶ 69. Plaintiff complained of "extreme fatigue and thirst" and his "speech was noticeably slurred and incoherent." *Id.* at ¶¶ 69–70.

During the ride home, Plaintiff lost consciousness and began seizing and struggling to breathe, prompting Ms. Eison to call for emergency services. *Id.* at ¶ 71. The hospital determined Plaintiff was in critical condition, finding that "there was muscle breakdown experienced by Plaintiff M.T. as a result of severe dehydration and physical exertion in the heat, and which consequently sent his Sickle Cell trait into crisis mode, causing a series of traumatic symptoms and injuries, including strokes in Plaintiff's brain." *Id.* at ¶¶ 72–73. Plaintiff "was largely unresponsive and remained on a breathing tube for the first seven days" that he was in the hospital, and he "was completely non-verbal and incapable of communicating verbally until the end of September 2015." *Id.* at ¶¶ 74, 83. Following his hospitalization, Plaintiff "has been

4

forced to receive medical treatment from numerous medical providers and medical facilities in an attempt to alleviate the symptoms of the heat-related illness and injury which was caused by" Defendants' acts. *Id.* at ¶ 75. Some of Plaintiff's injuries "are of a permanent nature," and as such, he "will suffer from residual problems for the remainder of his life." *Id.* at ¶ 81.

Plaintiff M.T., through his mother, brings this suit against John Peterman, Head Football Coach and Athletic Director; Bernard Scott, Freshman Football Coach; Eric Kostic, Penn Hills High School principal; and Penn Hills School District (collectively, the School District Defendants). Plaintiff also brings suit against Jeremy Erkel and Maureen Loyer, athletic trainers, as well as UPMC (collectively, the UPMC Defendants). In Counts I through VII, Plaintiff names one Defendant per Count, and claims that each Defendant violated Plaintiff's rights under the Fourteenth Amendment of the United States Constitution by violating his right to bodily integrity. In Counts VIII through XIV, Plaintiff also claims that each Defendant violated his right to bodily integrity under Article I, Section 1 of the Pennsylvania Constitution, again naming one Defendant per Count. Additionally, Plaintiff brings claims of negligence and vicarious liability in Counts XV and XVI against Defendant UPMC. The UPMC Defendants and the School District Defendants seek dismissal of the Second Amended Complaint on various grounds in their respective Motions to Dismiss (ECF Nos. 36, 39) and supporting briefs (ECF Nos. 37, 40).

**II. Motions to Dismiss**

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted). The court then must "determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it alleges "'enough facts to state a claim for relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), thereby enabling the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

A. Section 1983 claims

*1. Specificity regarding personal involvement*

Both the School District Defendants and the UPMC Defendants argue that the Second Amended Complaint lacks specificity regarding the personal involvement of each Defendant, thus failing to put each Defendant on notice. (ECF No. 37, at 4; ECF No. 40, at 5). Plaintiff counters that he may allege misconduct against the Defendants collectively, and that "Defendants woefully mischaracterize" his stylistic choice. (ECF No. 45, at 5).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the "short and plain statement" is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations omitted). The level of specificity necessary to give a defendant fair notice depends on the context of the case. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case . . . ."). "[F]or a § 1983 claim to survive a motion to dismiss, a plaintiff must allege 'that

6

each and every defendant was personally involved in depriving him of his rights.'" *Good v. Trish*, 2007 U.S. Dist. LEXIS 67764, at *11 (M.D. Pa. Sept. 13, 2007) (quoting *Kirk v. Roan*, 2006 U.S. Dist. LEXIS 65676, at *3 (M.D. Pa. Sept. 14, 2006)). For instance, an individual cannot be liable under § 1983 simply by being in the immediate vicinity of alleged wrongdoing. *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018). Thus, the plaintiff must establish each defendant's personal involvement in the alleged constitutional violation through, for example, factual allegations of "'personal direction,' 'actual knowledge and acquiescence,' or 'direct discrimination.'" *Good*, 2007 U.S. Dist. LEXIS 67764, at *11 (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)). Such allegations "'must be made with appropriate particularity.'" *Chinniah v. East Pennsboro Township*, 2019 U.S. App. LEXIS 2326, at *6 (3d Cir. Jan. 24, 2019) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). In sum, "general allegations concerning 'individual defendants' as a group" are insufficient to maintain the individuals as defendants to a lawsuit. *Menkowitz v. Pottstown Mem. Med. Ctr.*, 1999 U.S. Dist. LEXIS 9180, at *12 (E.D. Pa. June 21, 1999).

Lastly, when a complaint lacks factual specificity, courts generally grant leave to amend before dismissing the complaint. *Broadwater v. Fow*, 945 F. Supp. 2d 574, 590 (M.D. Pa. 2013). However, a court does not need to grant leave to amend if such amendment would be futile, such as where the plaintiff "acknowledges that he asserted all facts against [the defendant] that are available to him." *Id.*

Here, Defendants contend that the Second Amended Complaint lacks the necessary specificity to put each Defendant on notice. (ECF No. 37, at 4; ECF No. 40, at 4). First, Plaintiff fails to specify the duty owed by each Defendant. As an initial matter, Plaintiff repeatedly refers to the 2017-18 PIAA rules and regulations, (ECF No. 26, at ¶¶ 23, 30–33), even

though Defendants' alleged misconduct occurred in August 2015. The School District Defendants ask that any reference to 2017-18 rules be stricken as impertinent matter. (ECF No. 40, at 6). References to rules and regulations that post-date the events at issue are irrelevant to this suit, and as such, these allegations are so stricken from the Second Amended Complaint under Fed. R. Civ. P. 12(f). As to the remaining rules and regulations, all refer to what coaches are required to do, and they do not mention duties owed by high school principals or athletic trainers. *Id.* at ¶¶ 25, 36, 53, 56. Plaintiff does not plead facts relating what duties athletic trainers and high school principals owe, if any, the breach of which would result in a violation of Plaintiff's constitutional rights. One paragraph of the Second Amended Complaint tangentially references what may be considered a duty of the "coaching staff," but the reference is made in the context of what a coach is required to do—that is, coaches are required to "[k]now the importance for all members of the coaching staff to closely monitor all athletes during practice and training in the heat, and recognize the signs and symptoms of developing heat illnesses." (ECF No. 26, at ¶¶28, 30). However, Plaintiff does not allege that Defendant Kostic, as the high school's principal, or Defendants Erkel and Loyer, as athletic trainers employed by UPMC, were members of the coaching staff.

Second, Defendants argue that Plaintiff's repeated use of a collective "Defendants" is fatal to Plaintiff's § 1983 claims because Plaintiff fails to specify which Defendant engaged in which acts or omissions. (ECF No. 37, at 6; ECF No. 40, at 4). The Court agrees with Defendants' argument, despite Plaintiff's contention in his brief and oral argument that "Defendants" means all seven Defendants. Beyond the initial paragraph in the Second Amended Complaint that identifies Kostic as a Defendant (ECF No. 26, at ¶ 7), Defendant Kostic is not mentioned by name in any of the factual allegations. Likewise, Defendants Erkel, Loyer,

8

UPMC, and PHSD are named in several paragraphs identifying them as Defendants and alleging the various relationships among the Defendants, *id.* at ¶¶ 8–13, 21, 76–77, but these Defendants are not mentioned in the factual allegations regarding the alleged acts and omissions that led to Plaintiff's medical crisis. The only Defendants specifically identified as having any amount of personal involvement are Defendants Peterman and Scott. However, Defendants Peterman and Scott are only so named in four paragraphs, and even then, they are still grouped with a collective reference to "Defendants." *Id.* at ¶¶ 46–48, 68.

The generic references to "Defendants," taken together with the lack of clarity regarding the governing rules and regulations, and consequently, what duties or roles each Defendant is required to perform, leaves Defendants unapprised of what exactly each is accused. Plaintiff must plead facts alleging the personal involvement of each and every defendant in order sufficiently plead a § 1983 claim, and Plaintiff fails to do so. As a result, Plaintiff's § 1983 claims in Counts I through VII must be dismissed for failure to state a claim.

*2. Qualified immunity*

Even if the Second Amended Complaint alleged, with sufficient specificity, a § 1983 claim against each Defendant—and assuming for the sake of argument, but not deciding, that the UPMC Defendants are state actors—Defendants Peterman, Scott, Kostic, Erkel, and Loyer argue that they are entitled to qualified immunity. (ECF No. 37, at 9–14; ECF No. 40, at 7–11). Qualified immunity is generally afforded to government officials who perform discretionary functions, and it shields these government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Whether such a government official "may be held personally liable for allegedly unlawful official action generally turns on

the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 639 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982)). The action in question does not need to have been previously held unlawful, but "in the light of the pre-existing law the unlawfulness must be apparent." *Id.* at 640. Accordingly, alleging a violation of a generalized right is insufficient; the right must be defined in a more particularized manner. *Id.*; *see also Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) ("[C]ourts are 'not to define clearly established law at a high level of generality.'"). The more particularized manner should be framed "'in light of the case's specific context.'" *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d at 638 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The first issue, then, is to identify the particular right that is at issue. Plaintiff argues that the right at issue is a person's right to bodily integrity, a clearly established right under the Fourteenth Amendment. (ECF No. 45, at 11). However, a person's right to bodily integrity is a generalized right, not a particularized one. *Spady*, 800 F.3d at 638. The specific context in this case, by which the right at issue must be framed, is a student with a greater-than-average vulnerability to heat-related illness, who was encouraged to exert himself during football practice without an adequate hydration plan in place, became dehydrated and fatigued, showed signs and symptoms of heat-related illness, and ultimately collapsed on the practice field. Thus, the specific constitutional right alleged under the Fourteenth Amendment in this context is the right to implementation of a hydration plan and monitoring for signs and symptoms of heat illness.

The next issue is whether the law in this context was clearly established in August 2015, such that it would have been apparent to a reasonable high school football coach, principal, or athletic trainer that failure to implement a hydration plan and monitor Plaintiff for heat illness

symptoms violated Plaintiff's constitutional rights. In *Spady*, decided only three weeks after the incident at issue here, the Third Circuit pointed out that "no decision of the Supreme Court even discusses the right of students to have adequate safety protocols in [public-school swimming class] settings or in any analogous setting." *Spady*, 800 F.3d at 639. In summarizing several cases for the purpose of outlining what was "clearly established" in the school athletic setting, the *Spady* court noted that "courts that have found colorable constitutional violations in school-athletic settings did so where state actors engaged in patently egregious and intentional misconduct." *Id.* at 641. The court distinguished between cases in which "patently egregious and intentional misconduct" was present and cases based on "the typical risks that are associated with participation in athletic activities." *Id.* One such "typical risk" case was an Eleventh Circuit case, *Davis v. Carter*, in which a student-athlete died after a rigorous football practice. *Id.* In *Davis*, the plaintiffs alleged that "the coaches failed to provide enough water to keep Davis hydrated, ignored signs and Davis's complaints that he was becoming dehydrated, subjected Davis to rigorous conditioning drills at the end of a two-hour practice, and failed to attend to Davis until after a team meeting, even though he had collapsed in the middle of the drills." *Davis v. Carter*, 555 F.3d 979, 980–81 (11th Cir. 2009). The Eleventh Circuit found no constitutional violation, adding that "[w]hile the circumstances of this case are truly unfortunate, Plaintiffs' claims are properly confined to the realm of torts." *Id.* at 984.

In light of *Spady*, which took into consideration *Davis*—a case that is factually very similar to the present case—the right to implementation of a hydration plan and monitoring for signs and symptoms of heat illness was not a clearly established constitutional right under Supreme Court or Third Circuit case law in August 2015. As such, Plaintiff has not pleaded facts that overcome the claims of qualified immunity by Defendants Peterman, Scott, Kostic,

Erkel, and Loyer. Therefore, in addition to dismissal for lack of specificity, Plaintiff's § 1983 claims against Defendants Peterman, Scott, Kostic, Erkel, and Loyer, in Counts I, II, III, V, and VI of the Second Amended Complaint, are also dismissed based upon qualified immunity.

*3. Monell liability*

Lastly, again assuming that the Second Amended Complaint stated factual allegations with sufficient specificity, and assuming, but not deciding, that Defendant UPMC is a state actor, Defendants PHSD and UPMC argue that the § 1983 claims against them are improper because they cannot be held liable on a theory of respondeat superior. (ECF No. 37, at 5; ECF No. 40, at 5–6). Plaintiff agrees that government entities cannot be vicariously liable for a § 1983 claim under *Monell*. (ECF No. 45, at 7). Plaintiff instead contends that he brings a § 1983 claim against Defendants PHSD and UPMC directly, on a policy, practice, or custom theory, arguing that the single incident involving Plaintiff is sufficient to establish a policy, practice, or custom that violates Plaintiff's constitutional rights. (ECF No. 45, at 7; ECF No. 47, at 7). Specifically, Plaintiff argues that Defendant PHSD's unconstitutional policy or custom here is that Defendant PHSD failed to train or supervise its coaches. (ECF No. 45, at 8). Likewise, Plaintiff argues that Defendant UPMC's unconstitutional policy or custom is that Defendant UPMC failed to train or supervise its athletic trainers. (ECF No. 47, at 7).

In *Monell*, the Supreme Court held that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). As the Third Circuit recently explained, "A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation." *Mann v. Palmerton Area Sch. Dist.*, 872

F.3d 165, 175 (3d Cir. 2017). Inadequate training or supervision may constitute such a policy or custom. *Estate of Adriano Roman v. City of Newark*, 2019 U.S. App. LEXIS 3154, at *13–14 (3d Cir. Jan. 29, 2019). To establish liability on a failure-to-train or failure-to-supervise theory, the plaintiff must first "identify specific acts or omissions of the supervisor that evidence deliberate indifference." *Brown v. Muhlenberg Township*, 269 F.3d 205, 218 (3d Cir. 2001). "A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" *Estate of Adriano Roman*, 2019 U.S. App. LEXIS 3154, at *14 (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011)). After establishing the existence of deliberate indifference, the plaintiff must then "persuade the court that there is a relationship between the identified deficiency and the ultimate injury." *Brown*, 269 F.3d at 218.

Plaintiff relies on a 1984 case from the Central District of California, which says that "a single, unusually egregious incident can be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision." *Martini v. Russell*, 582 F. Supp. 136, 142 (C.D. Cal. 1984); ECF No. 45, at 8; ECF No. 47, at 7. Plaintiff argues that the Court can infer from Plaintiff's allegations against Defendants Peterman, Scott, Kostic, Erkel, and Loyer that "a jury could find that the misconduct rose to 'culpable negligence or deliberate indifference.'" ECF No. 45, at 8 (quoting *Martini*, 582 F. Supp. at 142); ECF No. 47, at 7. The Third Circuit recognizes that "a single constitutional violation may amount to deliberate indifference." *Wright v. City of Philadelphia*, 685 Fed. Appx. 142, 147 (3d Cir. 2017) (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). However, "for the single incident

13

theory to apply, the complaint must contain sufficient allegations establishing that a municipality's policymakers knew 'to a moral certainty' that the specific constitutional deprivation would occur as a result of the municipality's custom or policy." *Milbrand v. Miner*, 2018 U.S. Dist. LEXIS 144546, at *19 (M.D. Pa. Aug. 24, 2018) (quoting *Canton*, 489 U.S. at 390 n.10). "Normally, a pattern of violations places policymakers on notice that their custom or policy is inadequate, but in single incident cases, the policy's deficiency must be so obvious, and the likelihood of constitutional harm so great, that notice to the policymakers may be assumed." *Id.* at *19–20 (citing *Connick*, 563 U.S. at 61–62 (2011)).

Here, Plaintiff does not plead facts supporting the existence of a pattern or practice, including a failure to train or supervise, even on a single-incident theory. First, Plaintiff does not plead any facts alleging that other players suffered similar injuries under similar circumstances, nor does Plaintiff plead facts alleging that the football program or UPMC has a policy, practice, or custom of not providing adequate hydration to players or not monitoring players for heat illness. Additionally, under the test for failure-to-train and failure-to-supervise claims, Plaintiff fails to plead facts showing that the decision about whether to hydrate players or monitor for heat illness "involves a difficult choice or a history of employees mishandling." *See Estate of Adriano Roman*, 2019 U.S. App. LEXIS 3154, at *14. Second, Plaintiff does not plead facts showing that "the wrong choice by an employee will frequently cause deprivation of constitutional rights." *See id.* The facts Plaintiff does allege here regarding the single incident on August 11, 2015, though unfortunate, do not establish that Defendant PHSD "knew to a moral certainty that a specific constitutional deprivation would occur"—after all, as discussed above regarding the individual Defendants' qualified immunity defense, the alleged constitutional

14

rights that Plaintiff argues were violated were not clearly established at the time of the events at issue here.

Accordingly, in addition to dismissal for lack of specificity, Plaintiff's § 1983 claims against Defendants PHSD and UPMC, in Counts IV and VII of the Second Amended Complaint, are also dismissed because Plaintiff does not allege facts supporting direct liability.

Furthermore, based on the foregoing discussions of qualified immunity and *Monell* liability, Plaintiff will be unable to allege facts sufficient to show a constitutional violation. As a result, amendment of the Second Amended Complaint would be futile.

B. Pennsylvania constitutional claims

Plaintiff also brings state constitutional claims against each Defendant, in Counts VIII through XIV of the Second Amended Complaint. (ECF No. 26). Plaintiff alleges that Defendants violated his right to bodily integrity, which is protected under Article I, Section 1 of the Pennsylvania Constitution, and seeks compensatory and consequential damages. *Id.* Defendants argue on various grounds that these claims should also be dismissed for failure to state a claim. (ECF No. 37, at 18–19; ECF No. 40, at 19). The Court does not need to address each argument here, as the UPMC Defendants correctly point out that Pennsylvania law does not recognize a private cause of action for damages under the Pennsylvania Constitution, including under Article I, Section 1. *See Jones v. City of Philadelphia*, 890 A.2d 1188, 1208, 1216 (Pa. Commw. Ct. 2006) (noting that "To date, neither Pennsylvania statutory authority, nor appellate case law has authorized the award of monetary damages for a violation of the Pennsylvania Constitution," and refusing to judicially create of such a cause of action); *Balletta v. Spadoni*, 47 A.3d 183, 192 (Pa. Commw. Ct. 2012) (applying the holding of *Jones* to claims brought under

Article I, Section 1 of the Pennsylvania Constitution). Accordingly, Counts VIII through XIV must be dismissed for failure to state a claim.

C. State law negligence claims

Lastly, Defendant UPMC argues that the state law negligence claims alleged in Counts XV and XVI should be dismissed because Plaintiff failed to timely file a certificate of merit. (ECF No. 37, at 19). Under the Pennsylvania Rules of Civil Procedure, a plaintiff bringing a professional liability claim must file a certificate of merit within sixty days after filing the original complaint.[1] Pa. R. Civ. P. 1042.3(a). Even though the certificate of merit requirement is found in a rule of civil procedure, it has been held to apply with equal force, as a substantive law, to professional negligence claims in federal courts. *Velazquez v. UPMC Bedford Memorial Hospital*, 328 F. Supp. 2d 549, 558 (W.D. Pa. 2004).

A professional liability claim is one "based upon an allegation that a licensed professional deviated from an acceptable professional standard." Pa. R. Civ. P. 1042.3(a). The rule provides a non-exhaustive list of professionals that are within its purview. *Id*; *see also UPMC v. CBIZ, Inc.*, 2017 U.S. Dist. LEXIS 162132, at *41 (W.D. Pa. Sept. 29, 2017)

---

[1] The sixty-day period generally runs from the filing of the original complaint even if the original complaint did not specifically bring professional negligence claims, so long as the averments in the original complaint sound in professional negligence. *See O'Hara v. Randall*, 879 A.2d 240, 245 (Pa. Super. Ct. 2005); *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 323 (Pa. Super. 2007). However, there are other cases in which courts have considered the sixty-day period following the filing of an amended complaint as the time period for filing a certificate of merit. *See, e.g., Kennedy v. Butler Mem'l Hosp.*, 901 A.2d 1042, 1046 (Pa. Super. Ct. 2006) ("Because [the plaintiff] was allowed to file an amended complaint, we must look at the certificate of merit that she timely filed after the amended complaint."); *Gazi Abdulhay v. Bethlehem Med. Arts, L.P.*, 2005 U.S. Dist. LEXIS 21785, at *5–6 (E.D. Pa. Sept. 27, 2005) (addressing plaintiffs' failure to file a certificate of merit within sixty days of filing their amended complaint). Here, the Court does not need to address which sixty-day period is relevant, as even the most recent one (following the filing of the Second Amended Complaint in May 2018) has plainly lapsed.

("Nothing in the text of the Rule states that it is an exhaustive list, nor does the Rule indicate or imply that it acts as a substantive bar to professional negligence claims for 'unlisted' professionals."). Athletic trainers must be licensed in order to provide athletic training services within the Commonwealth of Pennsylvania. 63 P.S. § 422.51a; 49 Pa. Code § 18.503. Licensed athletic trainers are considered healthcare practitioners and are regulated by the State Board of Medicine. 63 P.S. § 422.2. The certificate of merit requirement thus applies to claims alleging that licensed athletic trainers acted negligently by breaching a professional standard in the course of providing athletic training services, even though licensed athletic trainers are not expressly included in the list of professionals enumerated in Pa. R. Civ. P. 1042.3(a).

Plaintiff acknowledges that he did not file a certificate of merit, arguing that such action was unnecessary because the state law claims allege ordinary negligence, not professional negligence. (ECF No. 47, at 18). However, a review of the allegations stated in Counts XV and XVI of the Second Amended Complaint reveals otherwise. In Count XV, Plaintiff alleges that Defendant UPMC "retained, selected, and employed a number of athletic trainers and personnel, including Defendants Erkel and Loyer, for the specific purpose of providing athletic training to student football players, including Plaintiff, at Penn Hills School District." (ECF No. 26, at ¶ 297). Plaintiff alleges that Defendant UPMC owed various duties to Plaintiff: "to retain, train, select, and employ, only competent athletic trainers," *id.* at ¶ 299; "to properly and safely provide athletic training to Plaintiff," *id.* at ¶ 298; and "to avoid exposing Plaintiff to an unreasonable risk of harm in the course of UPMC's provision of athletic training to Plaintiff, *id.* Plaintiff then alleges that Defendant UPMC "breached its said duties." *Id.* at ¶¶ 300–01. All of these duties relate to acceptable professional standards, not simply the reasonably prudent person standard of ordinary negligence. Likewise, in Count XVI, Plaintiff alleges that Defendant

17

UPMC's agents owed "a duty of care to use reasonable care in the provision of athletic training, to employ proper and safe techniques in training, and to avoid exposing Plaintiff to an unreasonable risk of harm incident to the training." *Id.* at ¶ 306. Plaintiff then alleges that Defendant UPMC's agents, Defendants Erkel and Loyer, "breached the aforesaid duties and applicable standards of care *with respect to the provision of safe athletic training* to Plaintiff." *Id.* at ¶ 307 (emphasis added). Thus, this duty of care also relates to acceptable professional standards, and does not evince a claim for ordinary negligence.

As such, a certificate of merit was required in this case, and Plaintiff's failure to file a certificate of merit within sixty days of the Complaint requires dismissal of Counts XV and XVI, without prejudice.

THEREFORE, the Motions to Dismiss for failure to state a claim, filed by Defendants Peterman, Scott, Kostic, and Penn Hills School District, and by Defendants Erkel, Loyer, and UPMC, are hereby GRANTED. Accordingly, Plaintiff's Second Amended Complaint is hereby DISMISSED.

IT IS SO ORDERED.

DATE February 6, 2019

Marilyn J. Horan
United States District Judge